Citation Nr: 1710353 
Decision Date: 03/31/17 Archive Date: 04/11/17

DOCKET NO. 09-25 781 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Pittsburgh, Pennsylvania


THE ISSUE

Entitlement to service connection for hypertension, to include as secondary to service-connected diabetes mellitus, Type II (DM).


REPRESENTATION

Appellant represented by: Disabled American Veterans


ATTORNEY FOR THE BOARD

T. S. Kelly, Counsel 

INTRODUCTION

The Veteran, who is the appellant, served on active duty from August 1966 to August 1970, including combat service in the Republic of Vietnam. His decorations include the Vietnam Service Medal with FMF (Fleet Marine Force) Combat Insignia and the Combat Action Ribbon.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a June 2006 rating decision by the Department of Veterans Affairs (VA) Regional Office (RO) in Pittsburgh, Pennsylvania.

The Veteran's notice of disagreement (NOD) was received in May 2007. The RO issued a statement of the case (SOC) in May 2009. The Veteran filed VA Form 9 in July 2009. The Veteran's claim was remanded by the Board in October 2012, July 2015, and May 2016. The directives of the Board remands have been complied with and the matter is now ready for appellate review. 


FINDINGS OF FACT

1. The Veteran experienced neither a vascular injury or disease in service nor chronic symptoms of hypertension during service.

2. Symptoms of hypertension have not been continuous since separation from service, and hypertension did not manifest to a compensable degree in the year following separation from service. 

3. Current hypertension is not causally or etiologically related to service.


CONCLUSION OF LAW

The criteria for service connection for hypertension have not been met. 38 U.S.C.A. §§ 1101, 1110, 1112, 1116 (West 2014); 38 C.F.R. §§ 3.303, 3.307, 3.309, 3.310 (2016).



REASONS AND BASES FOR FINDINGS AND CONCLUSION

Duties to Notify and Assist

The Veterans Claims Assistance Act of 2000 (VCAA) and implementing regulations impose obligations on VA to provide claimants with notice and assistance. 38 U.S.C.A. §§ 5102, 5103, 5103A, 5107, 5126 (West 2014); 38 C.F.R §§ 3.102, 3.156(a), 3.159, 3.326(a) (2016). 

Proper notice from VA must inform the claimant of any information and medical or lay evidence not of record (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; and (3) that the claimant is expected to provide. Quartuccio v. Principi, 16 Vet. App. 183 (2002). This notice must be provided prior to an initial unfavorable decision on a claim by the RO. Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006); Pelegrini v. Principi, 18 Vet. App. 11 (2004). 

When VCAA notice is delinquent or erroneous, the "rule of prejudicial error" applies. See 38 U.S.C.A. § 7261(b)(2) (West 2014). In addition, the notice requirements of the VCAA apply to all five elements of a claim, including: (1) veteran status; (2) existence of a disability; (3) a connection between the veteran's service and the disability; (4) degree of disability; and (5) effective date of the disability. See Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006). Further, this notice must include information that a disability rating and an effective date for the award of benefits will be assigned if service connection is awarded. Id. at 486.

The RO, in an April 2005 and October 2012 letters, provided the Veteran with notice that informed him of the evidence needed to substantiate his claim. The letters also told him what evidence he was responsible for obtaining and what evidence VA would undertake to obtain. The letters further told him to submit relevant evidence in his possession. 

The Veteran was afforded several VA examinations during the course of this appeal, to include a December 2015 VA examination and a June 2016 VA addendum report, which addressed the directives set forth in the Board remand. When VA undertakes to provide a VA examination or obtain a VA opinion, it must ensure that the examination or opinion is adequate. Barr v. Nicholson, 21 Vet. App. 303, 312 (2007). The Board finds that the VA examinations of record are adequate for rating purposes, because they were performed by a medical professional, were based on a thorough examination of the Veteran, and reported findings and opinions pertinent to the rating criteria. Nieves-Rodriguez v. Peake, 22 Vet. App 295 (2008); see Barr v. Nicholson, 21 Vet. App. 303 (2007) (holding that VA must provide an examination that is adequate for rating purposes). Thus, the Board finds that a further examination is not necessary.

The Veteran has been afforded a meaningful opportunity to participate effectively in the processing of the claim, including by submission of statements and arguments presented by his representative and through a hearing if so desired. For these reasons, it is not prejudicial to the appellant for the Board to proceed to finally decide the appeal. Based upon the foregoing, the duties to notify and assist the Veteran have been met, and no further action is necessary to assist the Veteran in substantiating this claim.

Service Connection

The Veteran seeks service connection for hypertension claiming that it is caused and/or aggravated by his service-connected DM. In the alternative, the Veteran maintains that his hypertension arises as a result of his period of service, to include as a result of exposure to Agent Orange (AO). 

The Veteran is presently service connected for DM. Service connection for DM was awarded on a presumptive basis, pursuant to the regulatory provisions of 38 C.F.R. §§ 3.307(a)(6)(ii), (iii), and 3.309(e), based on the Veteran's presumed exposure to herbicides during his documented active duty inside the territorial confines of the Republic of Vietnam.

Service connection is warranted where the evidence of record establishes that a particular injury or disease resulting in disability was incurred in the line of duty in the active military service or, if pre-existing such service, was aggravated thereby. 38 U.S.C.A. § 1110; 38 C.F.R. § 3.303. Hypertension is a "chronic disease" listed under 38 C.F.R. § 3.309(a); therefore, the presumptive service connection provision of 38 C.F.R. § 3.303(b) apply to that claim. Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013). If a condition noted during service is not shown to be chronic, then generally a showing of continuity of symptomatology after service is required for service connection. 38 C.F.R. § 3.303(b). Service connection may be granted for any disease initially diagnosed after service when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d).

Hypertension will be presumed to have been incurred in service if manifested to a compensable degree within the first year following separation from active duty. 38 U.S.C.A. §§ 1101, 1112, 1113; 38 C.F.R. §§ 3.307, 3.309. 

In this regard, in order to establish service connection for the claimed disorder, there must be (1) medical evidence of a current disability; (2) medical, or in certain circumstances, lay evidence of in-service incurrence or aggravation of a disease or injury; and (3) medical evidence of a nexus between the claimed in-service disease or injury and the current disability. See Hickson v. West, 12 Vet. App. 247, 253 (1999). 

If a veteran was exposed to an herbicide agent during active military, naval, or air service, certain diseases shall be service-connected if the requirements of section 3.307(a)(6) are met even though there is no record of such disease during service, provided further that the rebuttable presumption provisions of section 3.307(d) are also satisfied. 38 C.F.R. § 3.309(e).

The diseases listed at 38 C.F.R. § 3.309(e) shall have become manifest to a degree of 10 percent or more any time after service, except that chloracne, porphyria cutanea tarda, and acute and subacute peripheral neuropathy shall have become manifest to a degree of 10 percent or more within a year after the last date on which the veteran was exposed to an herbicide agent during active military, naval, or air service. 38 C.F.R. § 3.307(a)(6)(ii). 

Pursuant to Section 3 of the Agent Orange Act of 1991, Public Law No. 102-4, 105 Stat. 11, the Secretary of Veterans Affairs (Secretary) entered into an agreement with the National Academy of Sciences (NAS) to review and summarize the scientific evidence concerning the association between exposure to herbicides used in Vietnam and various diseases suspected to be associated with such exposure. The NAS was to determine, to the extent possible, whether there was a statistical association between the suspect disease and herbicide exposure, taking into account the strength of the scientific evidence and the appropriateness of the methods used to detect the association; the increased risk of disease among individuals exposed to herbicides during the service in the Republic of Vietnam during the Vietnam era; and whether there is a plausible biological mechanism or other evidence of a causal relationship between herbicide exposure and the suspect disease. The NAS was required to submit reports of its activities every two years.

The Secretary, under the authority of the Agent Orange Act of 1991 and based on the studies by the NAS, has determined that there is no positive association between exposure to herbicides and any condition for which the Secretary has not specifically determined that a presumption of service connection is warranted. See Notice, 59 Fed. Reg. 341-346(1994); see also Notice, 61 Fed. Reg. 41,442-449, and 61 Fed. Reg. 57,586-589 (1996); Notice, 64 Fed. Reg. 59,232-243 (Nov. 2, 1999); Notice, 67 Fed. Reg. 42,600-08 (June 24, 2002); Notice, 72 Fed. Reg. 32,395-407 (June 12, 2007); Final Rule, 74 Fed. Reg. 21,258-260 (May 7, 2009); Final Rule, 75 Fed. Reg. 53,202-16 (Aug. 31, 2010). 

Notwithstanding the foregoing, the Veteran may still establish service connection with proof of actual direct causation. See Combee v. Brown, 34 F.3d 1039, 1043-44 (Fed. Cir. 1994); see also McCartt v. West, 12 Vet. App. 164, 167 (1999). "Of particular relevance to an analysis of medical evidence supporting such a nexus are factors such as whether a medical professional finds studies persuasive, whether there are other risk factors that might be the cause of the condition for which benefits are sought, and whether the condition has manifested itself in an unusual manner." Polovick v. Shinseki, 23 Vet. App. 48, 53 (2009). A statistical correlation between AO and a disease not on the presumptive list may not be the only basis for a positive nexus opinion; it may be part of the analysis, but the entirety of the analysis provided by the medical professional must be weighed and considered. Polovick, 23 Vet. App. at 53-54. 

Service connection may also be granted for disability which is proximately due to or the result of a service-connected disease or injury. 38 C.F.R. § 3.310; Allen v. Brown, 7 Vet. App. 439, at 448 (1995) (holding that service connection on a secondary basis requires evidence sufficient to show that the current disability was caused or aggravated by a service-connected disability). To establish secondary service connection, the law states that there must be (1) evidence of a current disability; (2) evidence of a service-connected disability; and (3) nexus evidence establishing a connection between a service-connected disability and the current disability. See Wallin v. West, 11 Vet. App. 509, 512 (1998).

It is the defined and consistently applied policy of VA to administer the law under a broad interpretation, consistent, however, with the facts shown in every case. When, after careful consideration of all procurable and assembled data, a reasonable doubt arises regarding service origin, the degree of disability, or any other point, such doubt will be resolved in favor of the claimant. 38 C.F.R. § 3.102. 

In evaluating the evidence in any given appeal, the Board has been charged with the duty to assess the credibility and weight given to evidence. Davidson v. Shinseki, 581 F. 3d 1313 (Fed. Cir. 2009); Jandreau v. Nicholson, 492 F. 3d 1372 (Fed. Cir. 2007); Buchanan v. Nicholson, 451 F. 3d 1331 (Fed. Cir. 2006); Klekar v. West, 12 Vet. App. 503, 507 (1999); Wood v. Derwinski, 1 Vet. App. 190, 193 (1991). Indeed, the Court has declared that in adjudicating a claim, the Board has the responsibility to do so. Bryan v. West, 13 Vet. App. 482, 488-89 (2000); Wilson v. Derwinski, 2 Vet. App. 614, 618 (1992).

The Veteran has indicated his belief that his hypertension is secondarily related to his service-connected DM. In the alternative, he has expressed his belief that his hypertension is related to his period of service, including his exposure to herbicides while in Vietnam. In support of his claim, the Veteran submitted an April 2007 statement from his private physician D. M., D. O., indicating that diabetes was the Veteran's primary disease and that hypertension was his secondary disease. The Veteran has also submitted several articles demonstrating a relationship between diabetes and hypertension, including insulin use and hypertension. 

In conjunction with his claim, the Veteran was afforded a VA examination in December 2015. Following examination, the examiner rendered a diagnosis of hypertension. The examiner, following a review of the record, indicated that hypertension was less likely than not incurred in or caused by the claimed inservice injury, event or illness. The examiner stated that there was no evidence of hypertension in the service treatment records or the separation examination and noted that the Veteran was diagnosed with hypertension in 1999. 

The examiner further opined that it was less likely than not that the Veteran's hypertension was proximately due to or the result of his service-connected diabetes. He indicated that based on the available medical records, the Veteran was diagnosed with diabetes in 2002 (there is a note in VBMS dated 10/15/02 which states that fasting blood sugar was consistent with diabetes). He further indicated that there was also a note in VBMS dated October 16, 1997, which mentioned hypertension. Therefore, the hypertension preceded the diabetes. Also, the Veteran did not have renal dysfunction (normal BUN/creatinine, eGFR and microalbumin on September 30, 2015). Further, the Veteran did not have hypertension as a result of diabetic nephropathy (he does not have diabetic nephropathy). The examiner stated that with regard to the April 2007 note from Dr. D.M. regarding the nature of the Veteran's diabetes mellitus and hypertension - there was no rationale or evidence provided for the statement. As to the August 1998 letter which indicated the Veteran's diabetes mellitus was diagnosed at least by August 1998, but possibly earlier, the examiner indicated that he was not able to find/view this letter because it was not tabbed/bookmarked in VBMS. He stated that there was no documentation in the medical notes in VBMS (between 1997 and 2002) indicating that the Veteran was diagnosed with diabetes during that time. 

In its May 2016 remand, the Board noted that the Veteran was afforded a VA examination in December 2015, at which time the examiner rendered an opinion regarding whether or not the Veteran's hypertension was caused or aggravated by the Veteran's service-connected diabetes mellitus. The Board observed that with respect to causation, although the medical evidence mostly indicated that the Veteran's diabetes mellitus was diagnosed in 2002, an August 1998 letter from private physician, Dr. D.M., indicated that the Veteran's diabetes mellitus was diagnosed by at least 1998 but possibly earlier. The examiner was directed to consider the letter and indicate how an earlier diagnosis of diabetes mellitus impacted the examiner's opinion relating to hypertension. The Board observed that in the December 2015 VA examination report, the examiner stated, "I was not able to find/view this letter because it was not tabbed/bookmarked in VBMS." The Board noted that the examiner did not address whether an earlier diagnosis of diabetes would impact the examiner's medical opinion regarding hypertension. Thus, a remand for substantial compliance with the October 2012 Board remand directives was required. 

Furthermore, the Board noted that although the examiner opined as to whether or not the Veteran's hypertension was etiologically related to service, he did not render an opinion or rationale as to whether the Veteran's hypertension was aggravated by his service-connected diabetes mellitus. Thus, an additional opinion was necessary. 

The Board further observed that the Veteran submitted medical literature and case-control studies to support the assertion his hypertension is linked to his service-connected diabetes mellitus. The Board indicated that the examiner should review and discuss these medical opinions in his or her rationale. The Board also noted that the Veteran was presumed to have been exposed to AO during service. Thus, the examiner was requested to render an opinion as to whether the Veteran's AO exposure was related to his hypertension. 

The Board requested that the matter be returned to the examiner who performed the December 2015 VA examination. The examiner was requested to indicate whether it was at least as likely as not (a 50 percent or better probability) that the Veteran's hypertension was etiologically related to the Veteran's active service, to include related to herbicide exposure. If not etiologically related to his active service, was it at least as likely as not (a 50 percent or better probability) that the Veteran's hypertension was aggravated (i.e., permanently worsened beyond the natural progress of the disorder) by his service-connected diabetes mellitus. If aggravation was found, the examiner was to quantify the degree of such aggravation, if possible.

For the purposes of the opinion the examiner was to assume that the August 1998 letter, which indicated the Veteran's diabetes mellitus, was diagnosed at least by August 1998, but possibly earlier, was accurate. Thus, the examiner was to indicate whether an earlier diagnosis of diabetes mellitus impacted his/her opinion relating to hypertension.

The examiner was also requested to review the articles submitted with the Veteran's May 2007 NOD - "Exogenous Insulin Use and Hypertension in Adult Patients with Type 2 Diabetes" by Chin-Hsiao Tseng, and "Influence of Metabolic Syndrome on Hypertension-Related Target Organ Damage" by G. Mule, et. al. - as well as any relevant medical studies in formulating an opinion. In answering the questions posed above, the examiner was advised that the Veteran was competent to report injuries and symptoms, and that his reports were to be considered in formulating the requested opinion.

In a June 2016 addendum opinion, the examiner indicated that the condition claimed (hypertension) was less likely than not (less than 50% probability) incurred in or caused by the claimed in-service injury, event or illness. The examiner indicated that there was a lack of evidence that the Veteran's hypertension was etiologically related to the Veteran's active service, to include related to herbicide exposure. He stated that there was no evidence of hypertension in the service treatment records or the separation exam. The Veteran was diagnosed with hypertension around 1997 (Veteran separated from service in 1970). He indicated that there was inconclusive evidence that AO was a direct cause of hypertension. He noted that the Veteran had a documented history of obesity which was a known risk factor for hypertension. 

As to the question of aggravation, the examiner indicated that he had reviewed the conflicting medical evidence and was providing the following opinion: It is less likely than not that the Veteran's hypertension was aggravated (i.e., permanently worsened beyond the natural progress of the disorder) by his service-connected diabetes mellitus. The Veteran was diagnosed with diabetes around 1998. There was a note dated August 11, 1998, which stated that the Veteran had a "borderline hyperglycemic condition" at that time. He noted that the Veteran was diagnosed with hypertension around 1997. He observed that there was no evidence or documentation of diabetic renal disease/nephropathy which could aggravate/worsen the hypertension. Therefore, there was insufficient evidence that the hypertension was aggravated beyond its natural progression by the diabetes.

With regard to the submitted articles, the first one addressed the possible relationship between exogenous insulin use and hypertension but this did not apply in this case because the Veteran had not been on insulin. With regard to the second article listed above, the conclusion stated that metabolic syndrome may amplify hypertension-related cardiac and renal changes. The examiner indicated that this did not conclude that hypertension was a direct result of diabetes or aggravated by diabetes. The examiner stated that it was well known that obesity was a common risk factor for both hypertension and diabetes. He indicated that it was at least as likely as not that obesity was the most likely risk factor for both hypertension and diabetes in this case. (Van Buren PN, Toto R. Hypertension in Diabetic Nephropathy: Epidemiology, Mechanisms, and Management. Advances in Chronic Kidney Disease. 2 011; 18( 1 ): 2 8- 41 .

After a review of all the lay and medical evidence of record, the Board first finds that service connection for hypertension on a presumptive basis as due to exposure to herbicides is not warranted. The Veteran's DD Form 214 shows that he served in the Republic of Vietnam. As such, exposure to herbicides, including AO, during active service is presumed. See 38 C.F.R. § 3.307(a)(6)(iii). However, hypertension is not a disease that has been deemed associated with herbicide exposure under VA regulation; therefore, a medical nexus may not be presumed as a matter of law. 38 C.F.R. § 3.309(e), Note (2). 

Moreover, the December 2015 VA examiner, in his June 2016 addendum report, specifically stated that it was less likely than not that the Veteran's current hypertension was related to his AO exposure, indicating that there was inconclusive evidence that AO was a direct cause of hypertension and that obesity was the most likely risk factor for the Veteran's hypertension. 

Given the foregoing, service connection for hypertension on the basis of exposure to AO is not warranted. The Board is still obliged to fully consider the Veteran's claim on a direct basis. See Combee, 34 F.3d at 1043-44. 

The Board next finds that the weight of the evidence shows that no vascular injury or disease occurred during service, and no chronic symptoms of hypertension were manifested during service. The service treatment records show no complaint of, diagnosis of, or treatment for a vascular injury or high blood pressure. During the July 1970 service separation medical examination, the vascular system was clinically evaluated as normal, and the blood pressure reading was within normal limits (i.e., 114/78). The service treatment records, which are complete, show no vascular injury, vascular disease, or symptoms of hypertension during service. Such conditions would have ordinarily been recorded during service because the vascular system was evaluated during service. The Board finds that the weight of the evidence demonstrates that there were no "chronic" symptoms of hypertension during service. Furthermore, the Veteran has not contended that he experienced symptoms of hypertension during service. Therefore, the criteria for presumptive service connection under 38 C.F.R. § 3.303(b) based on "chronic" symptoms in service are not met.

The Board next finds that the weight of the evidence is against a finding that symptoms of hypertension were continuously manifested since service, including to a degree of ten percent disabling within one year of service separation. See 38 C.F.R. § 4.104, Diagnostic Code 7101. The earliest evidence of a hypertension diagnosis reflected in the evidence of record is shown in 1997, approximately twenty six years after service separation. The absence of post-service findings of, diagnosis of, or treatment for hypertension for twenty six years after service separation is one factor that tends to weigh against a finding of hypertension in service or continuous symptoms after service separation, including to a compensable degree within the first post-service year. See Buchanan v. Nicholson, 451 F.3d 1336 (Fed. Cir. 2006) (the lack of contemporaneous medical records is one fact the Board can consider and weigh against the other evidence, although the lack of such medical records does not, in and of itself, render the lay evidence not credible); see also Maxson v. Gober, 230 F.3d 1330, 1333 (Fed. Cir. 2000) (the passage of many years between discharge from active service and the medical documentation of a claimed disability is one factor to consider as evidence against a claim of service connection). 

Insomuch as the Veteran has attempted to establish a continuity of symptomatology or nexus through his own lay assertions, the Board finds that the etiology of hypertension falls outside the realm of common knowledge of a layperson and the Veteran is, thus, not competent to provide evidence on the issue of causation. See Jandreau, 492 F.3d 1372, 1377 n.4. Opinions as to causation involve making findings based on medical knowledge and clinical testing results, and the cardiovascular system is complex and involves unseen systems processes and disease processes that are not observable by the five senses of a lay person. Although the Veteran is competent to report having had high blood pressure readings at any given time, he has not been shown competent to identify latent symptoms of hypertension, or relate symptoms, patent or latent, to a diagnosis of hypertension. The evidence does not show clinical documentation of hypertension until many years after service. Consequently, the Veteran's opinion that purports to establish continuity of symptomatology or relate hypertension to active service is of no probative value. 

Moreover, as noted above, the December 2015 VA examiner, following a comprehensive review of the record and a thorough examination of the Veteran, opined that (hypertension) was less likely than not (less than 50% probability) incurred in or caused by the claimed in-service injury, event or illness, providing detailed rationale to support the opinion. 

Because the record does not show vascular injury, vascular disease, or chronic symptoms of hypertension in service, continuous symptoms of hypertension since service, hypertension manifested to a compensable degree within one year of service separation, or hypertension otherwise related to service, direct and presumptive service connection, including as due to herbicide exposure, for hypertension may not be established. 38 C.F.R. §§ 3.303, 3.307, 3.309.

As to the Veteran's belief that his hypertension is secondarily related to his service-connected DM, as noted above, the Board finds that the etiology of hypertension falls outside the realm of common knowledge of a layperson and the Veteran is, thus, not competent to provide evidence on the issue of causation. See Jandreau, 492 F.3d 1372, 1377 n.4. Consequently, the Veteran's opinion that purports to establish a relationship between his service-connected DM and his current hypertension is of no probative value.

Next, service connection may be granted when the evidence establishes a medical nexus between a claimed disability and a service-connected disability. When evaluating the weight of medical evidence, the Board is guided by the principle that the probative value of a medical opinion largely rests upon the extent to which such opinion is based upon a thorough evaluation of the Veteran's medical history, including but not limited to the medical evidence contained in the claims file. See, e.g. Miller v. West, 11 Vet. App. 345, 348. The Board may examine the factual foundation of a medical opinion, including whether the physician had access to relevant information of record. Nieves-Rodriguez v. Peake, 22 Vet. App. 295, 303-304 (2008). As noted above, the Veteran submitted an April 2007 letter from his private physician indicating that diabetes was his primary diagnosis and that hypertension was his secondary diagnosis. He also submitted several medical articles in support of his claim. As to the medical articles/treatises submitted, treatise evidence must discuss generic relationships with a degree of certainty such that under the facts of this particular case there is at least a plausible causality based on objective facts rather than on unsubstantiated lay opinion. See, e.g., Wallin v. West, 11 Vet. App. 509, 514 (1998); Timberlake v. Gober, 14 Vet. App. 122, 130 (2000) (citing Hensley v. West, 212 F.3d 1255, 1265 (Fed. Cir. 2000)). The articles/medical treatises submitted by the appellant are general in nature as opposed to specifically addressing the Veteran's case and are of little probative value. Moreover, the VA examiner, in his 2016 addendum opinion, addressed each article submitted by the appellant in detail and provided detailed rationale as to why it was not applicable to the Veteran's case. As to the April 2007 private medical opinion, there is no rationale to support this opinion. See Jones v. Shinseki, 23 Vet. App. 382 (2010) (holding that an opinion without any rationale against which to evaluate the probative value of his determination is inadequate). Moreover, while listing diabetes as the primary diagnosis and hypertension as the secondary diagnosis, there is no indication as to what, if any, relationship, there might be, Whether speculative or simply inadequate, the April 2007 medical opinion is of little probative value to show secondary service connection.

In contrast, the Board finds the opinions rendered by the December 2015 VA examiner, in his December 2015 report and June 2016 addendum report, to be the most probative of record. The VA examiner reviewed the Veteran's entire claims file, which at the time included his service treatment records, VA treatment records, private treatment records, the medical treatises submitted by the appellant, and statements from the appellant. Based on all of the evidence, the examiner rendered an opinion that was supported by a detailed and complete rationale. There was no indication that the VA examiner was not fully aware of the Veteran's past medical history or that he misstated any relevant fact. He also cited to specific evidence and addressed the evidence noted in the prior Board remands. Thus, the Board finds his opinion to be the most probative evidence of record.

Given the foregoing, the claim for service connection for hypertension on a direct, presumptive, and secondary basis must be denied. As the weight of the evidence is against the claim, the benefit-of-the-doubt doctrine does not apply. 38 U.S.C.A. § 5107(b) (West 2014); 38 C.F.R. § 3.102 (2016); Gilbert v. Derwinski, 1 Vet. App. 49 (1990).









ORDER

Service connection for hypertension is denied. 




____________________________________________
K. Parakkal
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs